IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN THE MATTER OF | * | |
| | * | |
| ALEXANDER ZENO | * | Miscellaneous Case No. 11-MC-275 |
| | * | |
| Respondent | * | |

# **OPINION**

## I.

Local Rule 701 of this Court sets forth the conditions for admission to the Bar of this Court.

Rule 701.1.a provides in pertinent part that "an attorney is qualified for admission to the Bar of this District if the attorney is, and continuously remains, a member in good standing of the highest court of any state (or the District of Columbia) in which the attorney maintains his or her principal law office, or of the Court of Appeals of Maryland, is of good private and professional character, [and] is familiar with the Maryland Lawyers Rules of Professional Conduct" and other Federal Rules.

Subsection (d) of the Rule reads: "*Non-Maryland Lawyers Maintaining Any Law Office in Maryland*. An attorney who is not a member of the Maryland Bar is not qualified for admission to the Bar of this District if the attorney maintains any law office in Maryland."

Subsection (e) of Rule 701.1 defines "Principal Office" as follows:

> "The term 'principal law office' as used in this Rule means 'the chief or main office in which an attorney usually devotes a substantial period of his

or her time to the practice of law during ordinary business hours in the traditional work week."

The subsection goes on to define six non-exclusive factors to be considered in determining whether an office is the attorney's "principal office."[1]

## II.

On January 24, 2011, Alexander Zeno filed, under penalties of perjury, an application for admission to the Bar of this Court. He certified that he was admitted to practice in the Commonwealths of Puerto Rico (as of January 17, 1997) and Massachusetts (as of October 5, 2006). He further indicated that he was familiar, *inter alia*, with the Local Rules of this Court.

He listed his address as:

RR-05
Box 7881
Toa Alta, Puerto Rico  00953

He gave as his main phone number 787-638-7818.

The application inquired as to whether Zeno had ever been denied admission to practice, disbarred, suspended from practice, or disciplined by any court or bar authority, to which he answered "yes." In an attachment explaining his response, he indicated that on June 4, 2007, the U.S. District Court for the District of Puerto Rico had suspended him from practice for a period of three months and had withdrawn his name from the Criminal Justice Act (CJA) panel until the fall of 2008. He indicated that soon after the suspension period ended he was reinstated to practice by the Puerto Rico federal court

and that, although he had requested more than once to have his name reinstated on the CJA Panel, his request had yet to be granted.

He reported that the suspension was based on an alleged threat he made to Judge Carmen C. Cerezo when he complained to her with regard to delays and arbitrariness in administering CJA payments and also because he was allegedly disrespectful to Judge Daniel R. Dominguez when he complained about sarcastic comments he said the Judge made and also about the Judge's alleged aiding the attempt of another attorney to interfere with Zeno's defense of his client. The suspension, Zeno reported, had been appealed to the U.S. Court of Appeals for the First Circuit which affirmed the suspension but which, in Zeno's opinion, "incorrectly found that the criticism of Judge Dominguez occurred during proceedings."[2] In his application to this Court, Zeno stated in italics "*I disagree with the holding of the First Circuit*," but said he decided not to seek review in the Supreme Court. He reported that other courts of which he was a member had considered the Puerto Rico matter in reciprocity proceedings and that the "only" court that decided to impose the same sanction was the Supreme Judicial Court of Massachusetts, in which he was subsequently reinstated to practice. However, he also stated the Federal District Court in Massachusetts had imposed reciprocal discipline because it had to follow the Massachusetts state court, while the District Court for the District of Columbia had not. On the other hand, he also stated that the Northern District

---

[1] These factors will be discussed in further detail in the body of the Opinion.
[2] Zeno stated that the First Circuit had completely disregarded the complaint by Judge Cerezo. *But see* n.4, *infra*.

of Texas had asked him to file briefs in the matter, but these were rejected "because they were a week late," such that the Texas court also imposed reciprocal discipline. But there, too, he indicated that he had been reinstated to that court's Bar. Zeno advised that the Fourth Circuit had not applied reciprocal discipline and that he was currently a member in good standing not only in that court, but in all the other referenced courts as well.

In the course of processing Zeno's application, it came to the attention of the Disciplinary and Admissions Committee of the Court (hereinafter "the Committee") that, in recent lawsuits filed in this Court where Zeno appeared as a *pro se* plaintiff, he had represented himself to be a resident of the State of Maryland. A quick Google search revealed at least one website which gave Zeno's office address as being in College Park, Maryland, a fact which suggested that he might be engaged in the practice of law in this State.[3] Those facts, together with the listing of what appeared to be a post office box in Puerto Rico as his "address," gave the Committee pause as to where Zeno in fact maintained his principal office for the practice of law.

In addition to the matter of the actual location of Zeno's principal office and the possibility that for some time he may in fact have been practicing law in Maryland, Zeno's negative interaction with the Puerto Rican Judges, as well as his apparent reluctance to accept the appellate court decision affirming the sanctions imposed on him

---

[3] The Google search indicated that Zeno's office address was 9308 Cherry Hill Road, College Park, Maryland, which Zeno stated at the June 27, 2011 hearing was, until a couple of years ago, his home address. He presently resides in Annapolis, Maryland.

by reason of those actions,[4] led the Committee to direct that Zeno appear before a Three-Three-Judge Panel of the Court to answer questions relative to his application for admission.

The hearing was scheduled for June 27, 2011 before a Panel consisting of Senior U.S. District Judge Peter J. Messitte, U.S. District Judge Roger W. Titus and U.S. Magistrate Judge Susan K. Gauvey.

By letter to Zeno dated March 2, 2011, mailed to the Puerto Rico box office address listed on his application, the Committee advised him that the following specific concerns of the Committee would be addressed at the June hearing:

a) Whether as a non-Maryland lawyer Zeno had maintained any law office in Maryland;

b) Where his principal law office, as defined in Local Rule 701.1.e, had been located over the past five years – in Puerto Rico, the District of Columbia, or Maryland;

---

[4] In his application to this Court, Zeno underplays the extent of his conflict with the Puerto Rican judges. Excerpts from the Federal District Court Panel's opinion in *In Re: Alexander Zeno*, 517 F. Supp. 2d 591 (D.P.R 2007), provide an altogether different perspective. *See* Attachment A hereto.

Among other things, in marked contrast to Zeno's statement to this Court that the First Circuit "completely disregarded the complaint of Judge Cerezo" (*see* Fn. 2, *supra*), the First Circuit's opinion refers to the "numerous examples" of Zeno's "disrespectful submissions" in the district court, seeing "no need to fully recount each of these incidents." *In Re Alexander Zeno*, 504 F.3d 64, 65 (1st Cir. 2007). The court goes on to cite, as a "representative sample," comments Zeno made to District Judge Dominguez. *Id*. This hardly amounts to a "complete disregard" by the First Circuit of Zeno's conduct toward District Judge Cerezo, as Zeno would apparently have it.

c) The extent to which in certain litigation in which he had personally been a litigant in this and other courts, he took any actions that might reflect upon his "private and professional character," as defined in Local Rule 701.1.a.

Zeno was further advised that, because as an applicant he had the burden of demonstrating his fitness to practice before the Court, he should come to the hearing prepared to present appropriate evidence as to each of these matters. He was further advised that he might, if he chose, be represented by counsel.

## III.

The June 27 hearing took place as scheduled. Zeno appeared without counsel, agreed to an open proceeding, and was sworn.

As the proceeding began, Zeno submitted to the Panel a letter dated June 26, 2011 responding to the Committee's letter of March 2, 2011. In lieu of an opening statement, he relied on this written submission. In it he:

- Complained that the inquiry had been delayed for some five months for no apparent reason other than for the Committee to continue its investigation.

- Argued that the Court's Rules were not only illogical, but contrary to his right to represent clients before this District.

- Disputed that there was any basis for inquiring into his "private and professional character," saying there was no basis for doubting his character.

- Took issue with Judge Messitte's participation in the proceeding because Judge Messitte had ruled against him in cases in this Court and in particular had become biased "as a result of his handling of my case against the judges."[5] He further urged that Judge Messitte was under a duty to disqualify himself from the present proceeding for failing to disclose, when ruling on the case against the judges (and presumably other cases), that he was a member of the Disciplinary and Admissions Committee.

In his letter of June 26, Zeno also made the following statements:

- He has been living in Maryland for the past five years.

- He has properly filed income tax returns in corresponding jurisdictions since then – the United States, Maryland, and Puerto Rico.

- With the exception of two cases that he handled under the CJA for the Fourth Circuit, all of his work relates to income coming from sources within Puerto Rico (noting, however, that "this year he had received some income from sources in Illinois").

---

[5] Zeno's "case against the judges" refers to a case in this Court in which he and his wife sued several Puerto Rican federal judges, the U.S. Attorney for Puerto Rico and several Assistant U.S. Attorneys from Puerto Rico. He asserted multiple causes of action, based on an alleged failure on the part of the judges to timely and properly pay him for CJA services, malicious or reckless conspiracy on the part of the judges in failing to do so, and, as to all the defendants, the initiation of an unwarranted disciplinary action against him. He sought compensatory and punitive damages for the nonpayment of the CJA amounts and to have the disciplinary proceedings dismissed against him retroactively.

On motion of the defendants, the Court dismissed the Complaint, *inter alia*, on the grounds of lack of personal jurisdiction over the defendants, as well as their absolute and partial immunity from suit. *Zeno, et al. v. Fuste, et al.*, Civil No. PJM 07-3173 (D. Md. 2008).

- As to the place where he takes care of his clients, it is clearly Puerto Rico, with the exception of clients incarcerated throughout the United States.

- As to where he does his work, most of it is done outside of Maryland, with the exception of a small percentage of his time spent in his home office writing memoranda of law.

- Most of his research is not done in Maryland.

- He has correctly claimed a federal income tax deduction for partial use of his home as an office.

- He receives his correspondence in Washington, D.C.

- His "principal office" is in Puerto Rico where he stays when he goes there to take care of business (noting that last year he spent three months in Puerto Rico taking care of a jury trial).

The June 26, 2011 statement was not submitted under penalties of perjury.[6]

## IV.

Since Zeno indicated that it was not necessary for him to make an opening statement beyond his written submission, the Court proceeded directly to address the matters raised in the submission.

Judge Messitte began by rejecting any suggestion that he should disqualify himself from the case or that he was biased or partial in any way. He stated that he simply ruled

---

[6] Subsequently, when asked during the hearing if the statement should be taken as being under oath, Zeno stated several times that he was <u>not</u> submitting it under oath, that it was merely "argumentative."

on the cases filed by Zeno that came before him and that his status as a member of the Disciplinary and Admissions Committee had no relevance to or effect upon his rulings in those cases.

The Committee then turned to the issues of concern as outlined in its March 2 letter.

    a)    <u>Principal Office</u>

Zeno took the position that his principal office has always been in Puerto Rico and denied that he has ever maintained a principal law office in Maryland. He also stated that the principal law office requirement "is concerned only whether or not [I] am in good standing in the district court there" and further, as to Local Rule 701.1.d, that "(a)ll that it requires is <u>that at the time</u> of admission to this Court's Bar [I] do not maintain a law office in Maryland. The requirement is in the present tense, not the past. . . . Even if I maintained a law office in Maryland, I do not maintain such office at present. The latter is what this Court should be concerned with and not with its interpretation of the past and of where my 'principal office' is. At present I do not have clients in Maryland nor do I have a law office in Maryland" [*Emphasis in original*].

The Panel noted that Zeno's application for admission to the Court's Bar lists the Toa Alta, Puerto Rico box number as his "address." In response to a question from the Panel, he estimated that he had not used that address in "a couple of years." The Panel observed that "a couple of years" back from a late June 2011 hearing would be

approximately late June 2009, whereas Zeno's application to the Court still listing the Toa Alta address, was dated January 24, 2011, just six months prior to the hearing. At the same time, Zeno indicated that he received very little mail at the Puerto Rico address, most recently the letters the Committee recently sent him advising of its concerns with his application for Bar membership.

Zeno conceded that he had no physical office in Puerto Rico. He identified the Toa Alta address as that of his father-in-law.[7] He indicated that, when in Puerto Rico, he would occasionally (a total of 4 to 5 times throughout his life) meet with clients in the offices of a friend or on occasion at a McDonald's Restaurant "or at a library or whatever." He stated that if a client in Puerto Rico needed to contact him, correspondence would have to be sent to his post office box in the District of Columbia.

Zeno indicated that while he physically maintained some files in a storage facility in Puerto Rico, most of his files were on his computer, which was used primarily in the State of Maryland. He stated that, at least until recently, some 90 to 95% of his work on legal matters was spent in Maryland, whereas 5 to 10% was spent in Puerto Rico.

Zeno stated that the only business card or letterhead he uses gives a post office address in the District of Columbia. He has no business card or letterhead address giving either a Maryland or Puerto Rico street or post office box address.

---

[7] Zeno identified a prior occasional residence in Puerto Rico as belonging to his mother, where he stated he could no longer stay because she had moved to Houston, Texas.

Zeno indicated that he traveled outside of Maryland and Puerto Rico to represent clients, mostly in federal criminal cases, but that Maryland and Puerto Rico were the places most of his work-related activity took place.

When asked whether he claimed a deduction for a home office in Maryland on his income tax returns, he indicated that he did. He declined, however, on Fifth Amendment grounds, to state what percentage of his rent he claimed as a home office deduction. When asked whether he was prepared to submit his income tax returns to the Committee demonstrating the extent to which he took the home office deduction, he declared the question irrelevant and again declined to comply on Fifth Amendment grounds.[8] Zeno suggested that as of the present he is not especially active with respect to his cases (although some of these remain pending). The Court understood him to be saying that it does not matter where he may have done legal work in the past, so long as he is not doing legal work there, *i.e.* in Maryland, at this time.

In response to an inquiry as to whether he had given notice anywhere that his practice was limited to work for Puerto Rican clients, Zeno invited the Court to consult

---

[8] Zeno was advised throughout the hearing that this was not a criminal proceeding and that, although he might have a right not to answer based on Fifth Amendment grounds, the Panel might also be disposed to draw inferences unfavorable to him on the basis of his invocation of the privilege.

The Fifth Amendment, as a rule, is not invocable in civil proceedings, *see*, *e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 317 (1976); *U.S. v. Stein*, 233 F.3d 6, 14-17 (1st Cir. 2000), including bar disciplinary proceedings, *see*, *e.g.*, *DeBock v. State*, 512 So. 2d 164, 166 (Fla. 1987). Even if properly invocable in the present context, the Fifth Amendment would not protect against the drawing of adverse inferences as a result of its assertion. *Baxter*, 425 U.S. at 318; *Stein*, 233 F.3d at 15.

his website – zenolaw.com – to determine whether there were any such limitations noted as to his practice. In the course of preparing this Opinion, the Court consulted the website and found the following statement:

> Alexander Zeno is a dedicated federal law attorney. He has been practicing in federal court for more than a decade. Within that jurisdiction he has concentrated in criminal law cases, particularly at the appellate level ... (he) also has knowledge and experience in the area of bankruptcy law. In that area he has represented clients in business organizations (Ch. 11), personal reorganizations (Ch. 13) and liquidation (Ch. 7). Mr. Zeno is also experienced in the area of federal civil rights litigation.

Further, under "areas of expertise," in addition to federal criminal law and federal appellate law, Zeno lists bankruptcy, civil rights, legal malpractice, corporate and immigration. At no place does the website indicate that Zeno's practice is limited to handling claims involving Puerto Rican clients or matters.

The law office address listed on the website is P.O. Box 92551, Washington, D.C. 20090-2551.

   b)   <u>Private and Professional Character</u>

Zeno argued that, so long as he is currently in good standing in other courts, even if he has been subject to disciplinary proceedings in the past, he meets the character requirements for admission to the Bar of this Court.

The Panel reviewed with Zeno the four cases that he filed as a litigant in this Court[9] and also adverted to the disciplinary case he was involved in in Puerto Rico, as

---

[9] In addition to (1) *Zeno v. Fuste*, referenced in footnote 4, *supra*, cases filed in Maryland Federal Court include (2) *Zeno, et al. v. Chevy Chase Bank, et al.*, Case No. PJM 08 CV 2236 (alleging failure of bank to provide certain services; on defendants' motion, dismissed for

well as the appeal connected with that case. When asked, however, whether he was currently a litigant in any other proceedings, Zeno again declined to answer on the grounds of the Fifth Amendment. When asked whether he was currently the subject of any disciplinary proceedings, he also declined to answer on the basis of the Fifth Amendment.

At the close of the hearing, Zeno was invited to supplement the record within two weeks with any further documentation in support of his application. By e-mail dated July 11, 2011, he did submit a sworn statement and a copy of a certificate indicating his admission to and good standing in the Bar of the U.S. District Court for the District of Columbia. In the sworn statement he indicated that his principal office, as of today, is located in 1776 "I" Street, N.W., Suite 900, Washington, D.C. 20006. [10]

## V.

The Court begins with the proposition that an applicant for admission to its Bar has the burden of proving that he meets the conditions for membership. *See*, *e.g.*, *In the*

---

failure to state claim); (3) *Zeno, et al. v. State of Maryland, et al.*, Case No. AW 08 CV 2337 (alleging failure of Motor Vehicle Administration to grant Maryland drivers licenses; on defendants' motions, dismissed *inter alia* for failure to state claim, sovereign immunity, and mootness); (4) *Zeno, et al. v. United States of America, et al.*, Case No. DKC 09 CV 0544 (in the words of Judge Chasanow, "Plaintiffs' alleged claims against the United States in this action are based on the same cause of action" as *Zeno, et al. v. Fuste, et al.*, PJM 07 CV 3173; dismissed *inter alia* on grounds of *res judicata* and collateral estoppel).

The Puerto Rico disciplinary proceeding is reported in *In re: Alexander Zeno*, 517 F. Supp. 2d 591 (D.P.R. 2007), *aff'd In Re Alexander Zeno*, 504 F.3d 64 (1st Cir. 2007).

[10] The affidavit is typewritten except that the office address is written in by hand. A Google search revealed that the suite number at this address houses a number of diverse non-attorney tenants, including organizations, as well as individual attorneys.

*Matter of the Application of Gregory John Strzempek*, 407 Md. 102, 104, 962 A.2d 988, 989 (Md. 2008).

Without question the Court is entitled to know where a lawyer's office is physically located, even if the lawyer works largely from a computer. *See In the Matter of the Application of Cedar P. Carlton*, 708 F. Supp. 2d 524 (D. Md. 2010) ("In recent years, the concept of a 'principal law office' has evolved somewhat as a result of significant advances in technology which provide an attorney with the flexibility to carry out a variety of activities at different locations and under varying circumstances. The term does not necessarily mean continuous physical presence but, at a minimum, it requires some physical presence sufficient to assure accountability of the attorney to clients and the court.") *See also Ramirez v. England*, 320 F. Supp. 2d 368 (D. Md. 2004).

Accordingly, the Court has gone to some length to define the term "principal office," in its Local Rules, establishing certain nonexclusive factors to be considered in determining whether an applicant's office is his "principal law office."

The broad definition of "principal law office," as indicated, is that it is "the chief or main office in which an attorney usually devotes a substantial period of his or her time to the practice of law during ordinary business hours in a traditional work week." Local Rule 701.1.e.

The following non-exclusive factors are deemed relevant to determining whether an attorney's office is the "principal office":

i. The attorney's representations of his or her "principal law office" or "law office" for purposes of malpractice insurance coverage, tax obligations and client security trust fund obligations.

ii. The address utilized in pleadings, correspondence with clients, applications for malpractice insurance and bar admissions, advertising, letterhead and other business matters.

iii. The location of meetings with clients, conduct of depositions, research and employment of support staff and associates.

iv. Location of client files, accounting records, and other business records, library and communication facilities such as telephone and fax service.

v. Whether the attorney has other offices, their locations and their relative utilization.

vi. The laws under which the law practice is organized, such as the place of incorporation.

Local Rule 701.1.e.

These factors, insofar as they apply at all, indicate that at all relevant times Zeno has maintained his principal office only in the State of Maryland. He has worked on a computer from his home in Maryland where, by his own admission, he has devoted a substantial period of time to the practice of law during ordinary business hours in a traditional work week.

Although he carries no malpractice insurance, he has paid his taxes in Maryland and has claimed a deduction for the office in his Maryland home on his tax returns.[11]

Although he maintains no advertising or letterhead reflecting a Maryland address – nor for that matter does he have one reflecting a Puerto Rico address – he has only a D.C. box office (which he has used in his personal filings in this Court). Again, at least as of the time of his application, one or more websites on the Internet have reflected an office for Zeno at his residence in College Park, Maryland, without any indication either that he was not admitted to practice in Maryland or that his practice was limited to federal matters or to matters involving Puerto Rico, Massachusetts, or some other jurisdiction.

Zeno states that he has never held any meetings with clients in Maryland and does not conduct depositions here, nor does he maintain employees, support staff, or associates (he apparently has none), but that he has conducted considerable research in Maryland libraries.

As for the location of his client files, accounting records and other business records, some physical documents are kept in Maryland (and some, to be sure, are stored in Puerto Rico), but he maintains most of his records on his computer which he has used primarily in his Maryland home. He has a mobile telephone which, of course, is not tied to any particular address within or without Maryland.

---

[11] Given Zeno's Fifth Amendment stance, the Court infers that, at a minimum, the amount of the home office deduction has been substantial.

The Court concludes that for a number of years, certainly as recently as the date of the hearing in this case, Zeno has maintained his principal law office, such as it is, in the State of Maryland and nowhere else. As of January 24, 2011 he declared <u>under oath</u> that the address in Toa Alta, Puerto Rico was his address, but then stated <u>under oath</u> at the June 27, 2011 hearing that that address had not been used for "a couple of years" prior to date of the hearing. The Court finds that Zeno's post-hearing attempt to establish an office in the District of Columbia – which may or may not be *bona fide* under the laws of the District of Columbia[12] – does not suffice to overcome the fact that for an extended period of time he has maintained his principal office in the State of Maryland, and not in Puerto Rico or elsewhere.

In consequence, his membership in the Court's bar is precluded for two reasons. First, by reason of Local Rule 701.1.d, Zeno is a non-member of the Maryland Bar who has maintained an office in this State.[13] Second, he does not maintain his principal

---

[12] Zeno's reliance on his membership in the Bar of the United States District Court for the District of Columbia does not advance his cause.

Local Rule LCvR 83.8 of the United States District Court for the District of Columbia provides, in pertinent part, that "(a)dmission to and continuing membership in the Bar of this court are limited to attorneys who are (1) active members in good standing in the District of Columbia bar or (2) active members in good standing of the highest court of any state in which the attorney maintains his/her principal law office." *See Ramirez*, 320 F. Supp. 2d at 375. *See also* n.14, *infra*. Rule 24 of the District of Columbia Court of Appeals defines the conditions for membership in the District of Columbia Bar. *See also* Rule 49 of that Court dealing with the unauthorized practice of law in the District of Columbia.

[13] The Court rejects Zeno's suggestion that he can simply vow to no longer "maintain" an office in Maryland, and immediately erase without consequence his apparent long-term practice of law in this State without having been licensed to do so. The unauthorized practice of law in

-17-

office, as defined by Local Rule 701.1.a., in any jurisdiction in which he is a member in good standing of the highest court of the State or the District of Columbia.[14]

As for the private and personal character issue, it is not necessary for the Court to determine whether Zeno possesses the character to be admitted to the Bar of this Court (although it remains highly troublesome that his sworn claim of an address in Puerto Rico as of January 24, 2011 conflicts with his sworn statement at the June 27, 2011 hearing that he terminated the Puerto Rico address "a couple of years" before).

It is enough to note that Zeno has failed to carry his burden of proof of fitness for membership. The Panel's inquiries as to whether he has been a litigant in previously undisclosed litigation or is currently the subject of disciplinary proceedings were entirely proper. He may have chosen to claim protection of the Fifth Amendment in responding to those questions but, as was clearly pointed out to him during the hearing, this is not a criminal proceeding and his invocation of the Fifth Amendment, in these circumstances, even if proper (a doubtful proposition), permits the Court to draw unfavorable or potentially unfavorable inferences. The Court does not know what Zeno's response to its inquiries may or may not have been. But it is clear that in the past past some of his litigation has involved an apparent threat to a judge and continuing

---

this State is, of course, unlawful. *See* Annot. Code of Maryland, Business Occupations Article, §10-601 (Practicing Without Admission to Bar); §10-606 (Penalties).

[14] The highest court of the District of Columbia is the District of Columbia Court of Appeals and Zeno is not a member of its Bar. The highest court is not, as Zeno appears to believe, the United States District Court for the District of Columbia.

serious challenges to the integrity of the judiciary, the impropriety of which he refuses to acknowledge to this day. Whether or not the Court would agree with Zeno that any of of his actions in Puerto Rico were well founded and justified, they certainly made and make highly relevant the Court's inquiry into his other litigation activities as well as his current disciplinary involvement.

The Court does not intend to affect Zeno's continued ability to continue his membership in the Bars of Puerto Rico and Massachusetts. Whether or not the State of Maryland has a particular interest in investigating his activities with regard to his practice here (or whether the District of Columbia has a similar interest with regard to his practice there) will remain for those authorities to determine.[15]

What the Court decides is that Zeno does not currently meet the eligibility requirements for membership in the Bar of this Court.

Accordingly Zeno's application for membership in the Court's Bar will be DENIED.

This Opinion has been authorized and approved by the Full Bench of this Court.

A separate Order will issue.

<u>September 12, 2011</u>  /s/
Date  DEBORAH K. CHASANOW
  Chief Judge

---

[15] The Court, however, will be sending a copy of this Opinion and Order to the Maryland Attorney Grievance Commission, the Committee on the Unauthorized Practice of Law of the District of Columbia Court of Appeals, and the United States District Court for the District of Columbia.